UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9-9-15_

IN RE FLETCHER INTERNATIONAL,
LTD.,

           Debtor.

ALPHONSE FLETCHER, JR.,

           Appellant,

  -v-

RICHARD J. DAVIS,

           Appellee.

No. 14–cv–6070 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Alphonse Fletcher, Jr. ("Appellant"), proceeding *pro se*, appeals the June 24, 2014 Order of the Honorable Robert E. Gerber, Bankruptcy Judge, denying Appellant's motion to (1) vacate the appointment of the Chapter 11 Trustee and various advisors; and (2) disgorge their fees and expenses. (Doc. No. 578 ("Disgorgement Order").)[1] For the reasons set forth below, the Disgorgement Order is affirmed.

## I. BACKGROUND

Appellant ran a family of investment funds, including Fletcher International, Ltd. ("FILB"), which, on June 29, 2012, filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. (Doc. No. 1.) For the first three months,

---

[1] All docket numbers refer to documents filed in the underlying bankruptcy proceeding, No. 12–12796 (REG), unless otherwise noted.

the bankruptcy progressed with FILB as debtor-in-possession. On September 5, 2012, upon the applications of FILB and the United States Trustee for Region 2 (the "United States Trustee"), the Bankruptcy Court held a hearing concerning the appointment of a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104(a)(2). (Doc. No. 99.) On September 25, 2012, the United States Trustee filed an application for the Bankruptcy Court to approve its appointment of Richard J. Davis, Esq. ("Davis") as Chapter 11 Trustee for FILB. (Doc. No. 112.) The application included a disclosure statement, wherein Davis declared "disinterestedness," as defined by 11 U.S.C. § 101(14), and listed past and current connections. (*Id.*) No one objected, and on September 28, 2012, the Bankruptcy Court approved Davis's appointment as the Chapter 11 Trustee (the "Trustee"). (Doc. No. 115.)

A Chapter 11 Trustee may employ disinterested professionals who do not hold or represent interests adverse to the estate. 11 U.S.C. §§ 327(a), 101(14)(a),(c). To ensure compliance with these requirements, all professionals must submit retention applications that disclose all connections with "the debtors, creditors, any other part[ies] in interest, [and] their respective attorneys." Fed. R. Bankr. P. 2014(a). These Rule 2014(a) disclosures are intended to allow the Bankruptcy Court to make an informed decision about potential conflicts of interest. In October 2012, pursuant to 11 U.S.C. § 327(a), the Trustee filed applications for authorization to employ Luskin Stern & Eisler LLP ("Luskin") as his counsel and Goldin Associates LLC ("Goldin") as his special consultants. (Doc. Nos. 120, 124.) Both Luskin and Goldin made extensive lists of their connections, both past and present, and checked them against a list of interested parties, submitted by Appellant on behalf of FILB. (*Id.*) Furthermore, Luskin and Goldin made explicit reference to Section 101(14) and affirmed, under penalty of perjury pursuant to 28 U.S.C. § 1746, that they were disinterested parties. (Doc. Nos. 120, 124.) Once again, no creditor or other

interested party filed objections to either application (Doc. No. 146), and, on November 12, 2012, the Bankruptcy Court granted both applications (Doc. Nos. 153, 154). Between November 2012 and March 2014, the Trustee, Luskin, and Goldin (together, the "Fiduciaries") each applied for and received interim fees on at least three occasions – again without objection. (*See, e.g.*, Doc. Nos. 172, 233, 308, 309, 359, 360.)

On November 25, 2013, the Trustee filed his Report and Disclosure Statement, which he amended on January 24, 2014, summarizing his findings regarding FILB and Appellant. (*See* Doc. Nos. 327, 393.) In particular, the Trustee's report found that Appellant had defrauded both creditors and investors – a finding that the Bankruptcy Court later confirmed. (*See, e.g.*, Doc. Nos. 393, 490 ¶¶ 79–83.) More specifically, the Trustee's report found that Appellant had misused investor money, invested outside of the fund's stated investment strategy, and systematically overvalued assets. (Doc. No. 393.) Accordingly, the Trustee proposed a liquidation plan whereby Appellant's claim would be deeply subordinated behind the approximately $120 million in allowed unsecured claims, with little chance of recovery. (Doc. Nos. 393, 490 ¶¶ 79–83.)

On March 19, 2014, nearly a year-and-a-half after the Fiduciaries were appointed, months after the Trustee's report was filed, and just hours before the Bankruptcy Court was to hold a hearing to discuss the Trustee's liquidation plan, Appellant – for the first time – raised concerns about the Fiduciaries in a letter to the Bankruptcy Court. (Doc. No. 481(a).)[2] In the March 19, 2014 letter, Appellant:   (1) alleged that the Fiduciaries had inadequately disclosed their connections when they were retained in 2012; (2) suggested that there were possible conflicts of interest involving the Fiduciaries, in violation of both Title 11 of the United States Code and the

---

[2] This letter was not docketed individually so it only appears as part of Appellant's motion to compel. Hereinafter, docket number 481(a) refers to the letter specifically and docket number 481(b) refers to the rest of the motion to compel.

Federal Rules of Bankruptcy Procedure; (3) requested a hearing to resolve the issue; and (4) requested a stay of further proceedings until the conflict issue was resolved. (*See id.*)  Since the March 19, 2014 letter was submitted long after the Fiduciaries had been appointed, and approximately one hour prior to the liquidation hearing, the Bankruptcy Court rejected Appellant's letter. (*See* Disgorgement Order ¶¶ 1–2 (citing Mar. 19, 2014 Tr. at 6:15–7:20).)  Nevertheless, the Bankruptcy Court permitted and encouraged Appellant to file proper motion papers, elaborating on and providing support for his claims. (*See id.* ¶¶ 2–3 (citing Mar. 19, 2014 Tr. at 6:15–7:20).)

On March 21, 2014, just one week before the Trustee's liquidation plan was to be confirmed (*see* Doc. No. 490), Appellant filed a motion to compel, which essentially rehashed the March 19, 2014 letter and requested that the Court (1) stay future actions, including confirmation of the Trustee's plan, and (2) compel the Fiduciaries to disclose potential conflicts of interest. (Doc. No. 481(b).)  Five days later, the Bankruptcy Court denied Appellant's request for a stay and directed Appellant to file, in anticipation of an April 2, 2014 status conference, a "simple table listing . . . three columns: person or entity, what the alleged failure is, and what the remedy desired is." (Doc. No. 486 at 25:1–5.)  On April 1, 2014, Appellant filed a table with the Bankruptcy Court that included six columns, did not list any desired remedies, and contained an additional thirteen pages of written descriptions of the alleged conflicts.  (Doc. No. 493.)  Moreover, the table discussed parties who were not estate Fiduciaries.  (*Id.*)  At the April 2, 2014 status conference, the Bankruptcy Court rejected this table as deficient and directed Appellant to prepare a brief clarifying his allegations and the relief sought.  (Doc. No. 503 at 31–32, 39.)  The Bankruptcy Court gave Appellant a month to submit this brief, which Appellant agreed would be enough time. (*Id.* at 38:9–14.)  The May 2, 2014 deadline came and went without Appellant filing his brief.

Meanwhile, on April 23, 2014, Appellant sought leave to file an untimely appeal of both the Bankruptcy Court's denial of his motion to compel and its order approving a proposed settlement between FILB and a creditor. (*See* No. 14–cv–2836 (WHP), Doc. No. 16.) In an order dated May 21, 2014, the Honorable William H. Pauley III, United States District Judge for the Southern District of New York, denied Appellant's motion, holding that the Bankruptcy Court had not abused its discretion in denying Appellant's motions since Appellant had failed to object in a timely manner. (*Id.*)

On May 21, 2014 – the same day that Judge Pauley denied his appeal – Appellant filed a disgorgement motion with the Bankruptcy Court, requesting that the Bankruptcy Court: (1) vacate the appointment and retention of the Fiduciaries; and (2) order disgorgement of all their compensation. (Doc. No. 544.) This motion did not include any new allegations or support; instead, the motion included Appellant's March 19, 2014 letter, the table, and the motion to compel, as well as a brief description of the relief sought. (*Id.*) All but two of the forty-seven pages had already been submitted to – and rejected by – the Bankruptcy Court. (*Id.*) On June 12, 2014, Appellant added four pages of supplementary information to the disgorgement motion. (Doc. No. 566.)

At a hearing on June 17, 2014, Appellant again raised the same concerns regarding inadequate disclosures and potential conflicts of interest, this time styled as an objection to the Fiduciaries' fee applications. (Doc. No. 577.) The Bankruptcy Court overruled Appellant's objection because Appellant had, once again, failed to comply with the Bankruptcy Court's instructions and deadlines. (*Id.* at 39:24–40:8.)

On June 24, 2014, the Bankruptcy Court issued the Disgorgement Order appealed here, which formally denied both the motion to compel and the disgorgement motion, citing Appellant's

continual failure to comply with Bankruptcy Court's orders. (Disgorgement Order.) The Disgorgement Order also made clear that, "[n]otwithstanding [Appellant]'s failure to comply with the Bankruptcy Court's prior orders, nothing raised in his March 19, 2014 letter, the [m]otion to [c]ompel . . ., the [table], or the [d]isgorgement [m]otion creates an issue of fact as to any conflicts the Trustee or his professionals allegedly failed to disclose." (*Id.*)

On June 27, 2014, Appellant filed notice of this appeal with the Bankruptcy Court (Doc. No. 589), and on August 4, 2014, notice of the instant appeal was entered on the Court's docket. (No. 14–cv–6070, Doc. No. 1.)  Pursuant to the Federal Rule of Bankruptcy Procedure then in effect, Fed. R. Bankr. P. 8009(a)(1) (2014), Appellant had until August 18, 2014 to file his brief with the Court.[3]  The Court's docket contains a notation, dated August 4, 2015, making it clear that "Appellant['s] Brief [is] due by 8/18/2014." (*See id.*)  Appellant missed this deadline. Nevertheless, rather than dismiss the appeal outright, on August 26, 2014, the Court extended the deadline to September 5, 2014, but warned Appellant that "[f]ailure to comply with this deadline may result in dismissal of the appeal." (No. 14–cv–6070, Doc. No. 12.) Despite this clear warning, Appellant did not file his brief by September 5, 2014.  Rather, Appellant e-mailed, but never docketed, a fifty-five-page brief to chambers on September 6, 2014, and then – without ever seeking leave of the Court – docketed an expanded and revised brief on September 9, 2014. (No. 14–cv–6070, Doc. No. 13 ("Appellant's Br.").)  This September 9, 2014 brief is more than seventy

---

[3] Amendments to the Federal Rules of Bankruptcy Procedure, including to Fed. R. Bankr. P. 8009(a)(1) (2014), went into effect on December 1, 2014, almost four months after the instant appeal was filed.  Under the old Rule, appellants were required to "serve and file a brief within 14 days after entry of the appeal on the docket." Fed. R. Bankr. P. 8009(a)(1) (2014). Pursuant to the new Rule – Rule 8018(a) of the Federal Rules of Bankruptcy Procedure – "unless the district court . . . specifies different time limits," Fed. R. Bankr. P. 8018(a), "[t]he appellant must serve and file a brief within 30 days after the docketing of notice that the record has been transmitted or is available electronically." Fed. R. Bankr. P. 8018(a)(1).  In the U.S. Supreme Court's order implementing the new amendments, it was noted that the amendments "shall govern in all proceedings in bankruptcy cases thereafter commenced and, *insofar as just and practicable, all proceedings then pending.*" Order of Apr. 25, 2014 adopting amendments to Fed. R. Bankr. P. (emphasis added).

pages long, in clear violation of this Court's Individual Practices, Rule 2.B, which limits briefs to twenty-five pages absent leave of the Court.

## II. STANDARD OF REVIEW

District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a)(1). Specifically, "Congress intended to allow for immediate appeal in bankruptcy cases of orders that finally dispose of discrete disputes within the larger case." *In re Fugazy Exp., Inc.*, 982 F.2d 769, 775 (2d Cir. 1992) (internal quotation marks omitted). A district court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *In re Bennett Funding Grp.*, 146 F.3d 136, 138 (2d Cir. 1998).

Decisions made by bankruptcy courts concerning docket management are reviewed for abuse of discretion. *See In re Crysen/Montenay Energy Co.*, 166 B.R. 546, 549 (S.D.N.Y. 1994) ("The standard of review . . . when the issue involves the bankruptcy court's discretionary control over the management of its own docket . . . is extremely narrow."); *see also In re Suprema Specialties, Inc.*, 330 B.R. 40, 45 (S.D.N.Y. 2005) (recognizing the bankruptcy court's discretion to manage its docket). More specifically, a bankruptcy court's decision to extend deadlines, allow late motions, or deny untimely motions are reviewed for abuse of discretion. *See, e.g., In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005) ("Bankruptcy court decisions to deny a request to file late are reviewed for abuse of discretion.").

Similarly, "[b]ankruptcy judges' findings on conflict of interest questions are entitled to deference because a bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." *In re AroChem Corp.*, 176 F.3d 610, 628 (2d Cir. 1999) (citation omitted). Accordingly, in light of the deference afforded to bankruptcy courts' findings on conflict of interest questions, such decisions

are reviewed for abuse of discretion.  *See Matter of Bohack Corp.*, 607 F.2d 258, 264 (2d Cir.

1979).   Likewise, bankruptcy courts' fee determinations and orders of disgorgement are also

reviewed for abuse of discretion.  *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir.

2000) ("[W]e review the Bankruptcy Court's . . . decision to award costs, attorney's fees and

damages for abuse of discretion."); *In re Vecchio*, 20 F.3d 555, 560 (2d Cir. 1994) ("[W]e believe

that bankruptcy courts can adequately address these concerns through the careful exercise of their

discretion over the entry of disgorgement orders.").

Thus, the Bankruptcy Court's decisions at issue here – managing its docket by enforcing

deadlines and procedural requirements, determining whether there were any conflicts of interest,

approving payment of professionals' fees, and denying disgorgement – will be reviewed for abuse

of discretion.  An abuse of discretion occurs where a bankruptcy court's decision (1) "rests on an

error of law (such as application of the wrong legal principle) or a clearly erroneous factual

finding," or (2) "cannot be located within the range of permissible decisions, even if it is not

necessarily the product of a legal error or a clearly erroneous factual finding."  *In re Smith*, 507

F.3d 64, 73 (2d Cir. 2007) (citation and internal quotation marks omitted).

### III. DISCUSSION

#### A. Appellant's Untimely Appeal

As an initial matter, the Court has the authority to dismiss an appellant's appeal for

untimeliness.  Federal Rule of Bankruptcy Procedure 8018(a)(4) specifies that "[i]f an appellant

fails to file a brief on time or within an extended time authorized by the district court . . . the district

court . . . , after notice, may dismiss the appeal on its own motion."  Fed. R. Bankr. P. 8018(a)(4).

A court need not automatically dismiss the appeal of a party who has not complied; it should

determine whether the dismissal is appropriate under the circumstances.  *In re Tampa Chain Co.*,

835 F.2d 54, 55 (2d Cir. 1987). Generally, a dismissal is warranted when an "appellant[] failed to comply . . . because of bad faith, negligence or dilatoriness." *In Re Truong*, 388 B.R. 43, 44 (S.D.N.Y. 2008). As set forth by the Supreme Court and the Second Circuit, excusable neglect is an "elastic concept," *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 392 (1993)), and in evaluating whether a party's neglect is excusable, courts should consider "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* (quoting *Pioneer*, 507 U.S. at 395). In particular, the Second Circuit has found that "failure to follow the clear dictates of a court rule will generally not constitute . . . excusable neglect." *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997).

As noted above, Appellant missed the initial deadline of August 18, 2014 to file his brief with this Court. Then, the Court ordered Appellant to file his brief by September 5, 2014, warning him that "failure to comply with this deadline may result in dismissal of the appeal." (No. 14–cv–6070, Doc. No. 12.) Once again, Appellant missed this deadline. Instead, on September 6, 2014, Appellant e-mailed to chambers a still undocketed fifty-five-page brief, and, without ever seeking or receiving the Court's permission, waited three days to then docket an expanded (by more than eighteen pages) and significantly revised brief. (Appellant's Br.) This September 9, 2014 brief is more than seventy pages long, well beyond the page limit permitted by the Court's Individual Practices. (*Id.*) While it is true that Appellant is proceeding *pro se*, that is insufficient on its own to constitute excusable neglect, since *pro se* litigants are "generally afforded some latitude,

Case 1:14-cv-06070-RJS   Document 16   Filed 09/09/15   Page 10 of 21

[but] . . . are nonetheless required to learn and comply with procedural rules." *Truong*, 388 B.R. at 45.

Moreover, Appellant has a long and well-documented history of missing deadlines and otherwise failing to comply with court orders. For example, Appellant: (1) waited nearly a year-and-a-half, until after the Trustee had found evidence of Appellant's malfeasance and had subordinated his claim, before raising any objection to the Fiduciaries' appointment or fees (Doc. No. 481(a)); (2) submitted a deficient table despite the Bankruptcy Court's clear instructions as to what information should be included therein (Doc. No. 493); (3) failed to submit a brief supporting and clarifying his motion to compel (*see* Doc. No. 503); (4) filed an untimely appeal to the Southern District (*see* No. 14–cv–2836 (WHP), Doc. No. 16); and (5) resubmitted materials to the Bankruptcy Court that it had previously rejected as defective (*see* Doc. No. 544). In short, Appellant waited until the bankruptcy proceedings had progressed significantly, and his claim had been subordinated, before raising his conflict-of-interest concerns involving the Fiduciaries. Even then, he continued to submit the same defective materials to the Bankruptcy Court and other courts, often in an untimely manner, despite repeatedly being given opportunities to correct the deficiencies and comply with the courts' orders. Under these circumstances and in light of Appellant's failure to submit a brief that was timely or in accordance with the Court's Individual Practices, the Court has ample grounds to dismiss this appeal for untimeliness.

Nonetheless, "[w]hile this case may properly be dismissed on procedural grounds alone," due to the untimeliness of Appellant's appeal and his long history of noncompliance, the Court is mindful that "it is important that issues presented by *pro se* litigants . . . also be addressed on the merits where appropriate." *Glendora v. Duncan*, 871 F. Supp. 174, 175 (S.D.N.Y. 1994). Additionally, the relatively short length of Appellant's delay combined with the fact that the

Federal Rule of Bankruptcy Procedure implicated here was recently amended to allow appellants additional time to file their briefs, counsel against dismissal on timeliness grounds. Finally, since Appellant has raised the same arguments again and again in different fora, resolving Appellant's claims on the merits will hopefully prevent further motions and further waste of judicial resources.[4] *See id.* at 176. Accordingly, the Court declines to dismiss this appeal for untimeliness, and will address the merits of Appellant's arguments.

### B. The Bankruptcy Court Did Not Abuse its Discretion

#### 1. The Bankruptcy Court Did Not Abuse its Discretion in Ruling that Appellant's Motion was Untimely and Failed to Comply with the Bankruptcy Court's Prior Orders

The Court first considers whether the Bankruptcy Court abused its discretion in denying Appellant's motion on the grounds that the motion was untimely and failed to comply with the Bankruptcy Court's instructions. As noted above and as relevant here, a court abuses its discretion when "its decision . . . cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

This bankruptcy proceeding was complex and time-consuming: there were years of financial transactions to analyze, the value of FILB's assets was uncertain, FILB was involved in

---

[4] It should be noted that in 2014 and 2015 alone, no fewer than three U.S. District Judges in the Southern District of New York have denied various bankruptcy appeals by Appellant. *See In re Sound View Elite Ltd.*, No. 14–cv–8615 (GHW), 2015 WL 2166023 (S.D.N.Y. May 8, 2015); *In re Soundview Elite Ltd.*, No. 14–cv–7045 (JPO), 2014 WL 7009070 (S.D.N.Y. Dec. 12, 2014), *reconsideration denied*, No. 14–cv–7666 (JPO), 2015 WL 1642986 (S.D.N.Y. Apr. 13, 2015); *In re Soundview Elite Ltd.*, 512 B.R. 155, 156 (S.D.N.Y. 2014), *aff'd*, 597 F. App'x 663 (2d Cir. 2015); *In re Fletcher Int'l Ltd.*, No. 14–cv–2836 (WHP), Doc. No. 16 (S.D.N.Y. May 21, 2014). Notably, on December 12, 2014, Judge Oetken rejected Appellant's similarly "attenuated and unsupported" arguments about assorted conflicts of interest purportedly held by various fiduciaries. *See In re Soundview Elite Ltd.*, 2014 WL 7009070, at *4 n.6; *id.* at *3 (rejecting Appellant's argument that the trustee in that case was not disinterested); *id.* at *4 ("[Appellant] alleges only vague and unsupported 'connections' between [the trustee] and the law firm she is employed by, Jones Day, and various parties he is personally in conflict with in a civil action brought by him against a Manhattan co-op board. . . . [Appellant] has failed to show how the interests involved in his personal conflict with the co-op board are relevant to the interests of the Debtors and Creditors in this case."); *id.* at *4 n.6 ("[Appellant] also alleges that the professionals employed by [the] [t]rustee in this case – specifically, the counsel and financial advisor – are not disinterested because they have relationships with parties associated with [Appellant's] dispute with the Manhattan co-op board. The relationships he alleges as to these parties, however, are equally attenuated and unsupported as are the relationships he alleges as to [the trustee].").

pending related litigation, and there were more than a dozen creditors asserting claims against FILB. (Doc. No. 393.) Thus, to ensure that the bankruptcy proceedings ran smoothly and expeditiously, the Bankruptcy Court – naturally and necessarily – set deadlines for, and dictated the form of, objections and motions. *See* 11 U.S.C. § 105(d) ("The [bankruptcy] court, on its own motion . . . may issue an order . . . prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically."); *cf. Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) ("[N]o adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Such sensible and routine management of the bankruptcy proceedings is hardly an abuse of discretion.

Additionally, Appellant's objections and motions came extremely late in the proceedings. The Fiduciaries were nominated and appointed in 2012, without objection from Appellant. (Doc. Nos. 112, 115, 120, 124, 153, 154.) In 2012, when the Fiduciaries were under consideration, the Bankruptcy Court set hard deadlines for objections and made clear that "only those [o]bjections that are timely filed, served and received will be considered." (Doc. No. 125.) Despite this plain warning, Appellant did not timely object. Thereafter, each Fiduciary submitted, without objection, multiple interim fee applications – which were each granted in turn – before Appellant first raised his concerns in 2014. (*See, e.g.*, Doc. Nos. 172, 233, 308, 309, 359, 360.) Once again, the Bankruptcy Court set clear deadlines for filing objections, which Appellant failed to meet. (*See, e.g.*, Doc. No. 172 ¶ 2.) Although "[a]n unjustified delay in bringing a motion [raising conflict-of-interest concerns] provides a separate ground to deny the relief requested in the underlying motion," *In re WorldCom, Inc.*, 311 B.R. 151, 166–67 (Bankr. S.D.N.Y. 2004) (citing *In re Enron Corp.*, No. 02–cv–5638 (BSJ), 2003 WL 223455, at *4 n.2 (S.D.N.Y. Feb. 3, 2003)), the Bankruptcy Court nevertheless entertained Appellant's untimely claims and gave him multiple

chances to fully and fairly litigate them.  Regrettably, Appellant did not take advantage of this opportunity, and once again failed to meet the Bankruptcy Court's deadlines and requirements.

Appellant first raised his concerns in his March 19, 2014 letter to the Bankruptcy Court. (Doc. No. 481(a).)  This letter was lengthy, unclear, and submitted just an hour before a scheduled hearing.  (*Id.*)  However, rather than dismiss the letter's allegations outright – as it could have – the Bankruptcy Court instead encouraged Appellant to file a proper motion.  When Appellant then submitted a deficient motion to compel, the Bankruptcy Court still did not dismiss Appellant's allegations.  Instead, the Bankruptcy Court informed Appellant of exactly what was required – a simple, three-column table – and gave him a week to prepare it.  (Doc. No. 486 at 25:1–5, 30.) This table, the Bankruptcy Court reasoned, would clarify Appellant's allegations and would allow the other parties to adequately respond.  After Appellant submitted a table which failed to comply with the instructions – it was six columns and did not list the relief sought – the Bankruptcy Court, for a third time, eschewed dismissal of Appellant's allegations outright, instead providing Appellant more detailed instructions and a month to prepare a brief supporting his motion, which Appellant himself said was a sufficient amount of time.  (Doc. No. 503 at 32:7–14, 38:9–18.) Appellant never filed the brief.  Instead, Appellant filed his disgorgement motion, a recapitulation of his earlier motion to compel, attaching material previously rejected as insufficient by the Bankruptcy Court, including his March 19, 2014 letter and the table.  (Doc. Nos. 544, 566.)  Then, for a fourth time, Appellant raised these same concerns at the June 17, 2014 conference.  (Doc. No. 577 at 18:10–20:23.)  At this point, the Bankruptcy Court finally, and properly, overruled Appellant's objection and rejected the motions in their entirety.  (*Id.* at 40:6–12.)

Put simply, the Bankruptcy Court did not abuse its discretion; indeed, its conduct was more than fair and entirely justified.  The Bankruptcy Court provided Appellant ample opportunity to

comply with its orders and set forth exactly what it expected from Appellant. Despite significant leeway from the Bankruptcy Court, Appellant repeatedly failed to adhere to deadlines and substantive instructions.    Accordingly, the Court has little difficulty concluding that the Bankruptcy Court did not abuse its discretion in denying Appellant's motion on the grounds that Appellant failed to meet deadlines and comply with its orders.

## 2. The Bankruptcy Court Did Not Abuse its Discretion in Rejecting Appellant's Conflict-of-Interest Arguments

A Chapter 11 Trustee is permitted to employ professionals "that do not hold or represent an interest adverse *to the estate*, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties." 11 U.S.C. § 327(a) (emphasis added). As set forth in the Bankruptcy Code, a disinterested person is one who "is not a creditor, an equity security holder, or an insider" and does not hold "an interest materially adverse to the interest *of the estate* or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." *Id.* § 101(14)(a),(c) (emphasis added). As defined by the Second Circuit, professionals hold or represent an interest adverse to the estate when they: (1) "possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant"; or (2) "possess a predisposition under circumstances that render such a bias against *the estate*." *Arochem*, 176 F.3d at 623 (emphasis added). Moreover, professionals "will be disqualified under section 327(a) only if [they] *presently* hold or represent an interest adverse to the estate, notwithstanding any interests [they] may have held or represented in the past." *Id.* (emphasis added) (internal quotation marks omitted). The Trustee is held to the same standard of disinterestedness as his professionals. Thus, for there to be a conflict of interest,

a Fiduciary would have to hold or represent an interest adverse to FILB while serving as a fiduciary.

Here, most of Appellant's allegations of bias arise out of his personal conflict with the board of the Dakota, the cooperative apartment building on the Upper West Side of Manhattan. In 2011, Appellant brought racial discrimination and defamation claims against the co-op board after his application to buy an apartment was denied. Appellant contends that, during the course of the Dakota litigation, members of the co-op board and their associates threatened to "destroy" Appellant and his funds, spread rumors about him, and attempted to tarnish his reputation in the financial services industry. (Appellant's Br. at i.) Appellant contends that each Fiduciary "hid and even denied representations of and connections to" the parties who had threatened him during the course of the Dakota litigation. (*Id.*) In short, Appellant's primary argument is that the Fiduciaries are affiliated, either personally or professionally, with the Dakota's board members and their associates, and thus, have interests adverse to Appellant and his businesses, including FILB. Appellant also asserts that the Fiduciaries had improper connections to various parties involved in the liquidation of his other funds overseas. (*Id.*) Finally, he argues that because of these conflicted interests, the Fiduciaries managed the estate so as to favor their connections. (*Id.*) Specifically, Appellant alleges that the Fiduciaries "secretly negotiated with [the Dakota defendants] for compensation beyond the $10,000,000 they charged the estate[,] then awarded the majority of the [FILB] estate to those parties." (*Id.*)

Before addressing Appellant's specific allegations, there are two underlying issues worth clarifying. First, Appellant's interest and the estate's interest are not identical. Appellant is one of many individuals asserting a claim to a portion of the estate. The Trustee's obligation, and that of his appointed professionals, is to make decisions in the best interest of the estate's creditors and

15

investors as a whole, not to do what is best for Appellant alone.  In fact, once the Trustee found that Appellant had defrauded investors and creditors, the Trustee's interest and those of his professionals necessarily became adverse to Appellant's.  (*See* Doc. No. 490 ¶¶ 79–83 (finding that Appellant's claim was equitably subordinated, pursuant to Federal Rule of Bankruptcy Procedure 7001, because Appellant had engaged in inequitable conduct).)  Second, FILB is not a party to the Dakota lawsuit and the lawsuit was not listed as an asset or as an ongoing litigation on FILB's schedules and statement of financial affairs.  (Doc. Nos. 104, 105.)  Thus, a connection to the Dakota does not create an interest adverse to FILB.  Furthermore, on these same grounds, the Fiduciaries would have had no reason to list any connections to the Dakota in their disclosures. (*Id.*)  Nevertheless, the Court will address Appellant's allegations against each Fiduciary in turn. As noted above, the Court reviews the Bankruptcy Court's conflict-of-interest determinations for abuse of discretion. *See Matter of Bohack Corp.*, 607 F.2d at 264.

### a.  The Trustee

Appellant's allegations concerning the Trustee are two-fold.  First, Appellant contends that the Trustee's professional relationships, through his former law firm, Weil Gotshal & Manges LLP ("Weil"), created adverse interests that disqualified him from serving as Trustee.  Second, Appellant argues that the Trustee's personal relationships also created adverse interests that made him an unsuitable Trustee in the bankruptcy.

The Trustee retired from Weil nine months before he became involved in the bankruptcy proceeding.  (Doc. No. 112.)  Appellant asserts that many Weil clients are connected to the Dakota, including Sotheby's, News Corporation, Ernst & Young, JPMorgan Chase, D.E. Shaw, HSBC, Blackrock, and Morgan Stanley.  (Doc. No. 493.)  Appellant contends that Weil's representation of these entities created a conflict of interest for the Trustee.  Appellant further maintains that the

Trustee has a conflict because Weil has a "close working relationship" with another law firm, Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), which represents the defendants in the Dakota litigation. (*Id.*) Finally, Appellant argues that because the Trustee sits on the board of Citizens Union, a not-for-profit corporation, with Anthony Smith, a named defendant in the Dakota lawsuit, the Trustee necessarily holds an interest adverse to the estate. (Appellant's Br. at 16.)

The Court finds that Appellant has not, and cannot, demonstrate that the Trustee "*presently* hold[s] or represent[s] an interest adverse *to the estate.*" *Arochem*, 176 F.3d at 623 (emphases added). First, Appellant fails to demonstrate why the parties he identifies as affiliated with the Trustee and/or Weil hold interests adverse to the estate; indeed, none are parties to the Dakota lawsuit or involved in the FILB bankruptcy. Second, Appellant does not allege that the Trustee *himself* represents interests adverse to the estate; instead, Appellant suggests that merely because his former law firm represents or represented clients with allegedly adverse interests, the Trustee does as well. However, as noted above, the Trustee no longer works at Weil and does not represent any of the parties that Appellant identifies. To violate Section 327, the Trustee *himself* must presently "hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a); *Arochem*, 176 F.3d at 623. Since the Trustee does not presently represent any of the identified parties, he does not "represent an interest adverse to the estate." 11 U.S.C. § 327(a). Moreover, Appellant's contention that the Trustee has an adverse interest because of Weil's "close working relationship" with Quinn Emanuel is unsupported and similarly meritless. Appellant fails to explain what he means by a "close working relationship" or why Quinn Emanuel is adverse to FILB by virtue of representing the Dakota in a case against Appellant as an individual. Moreover, Appellant presents no credible argument as to why this alleged relationship would create an adverse interest for the

Trustee, who no longer works at Weil. Thus, there is no indication that the Trustee holds or represents interests adverse to the estate stemming from his professional experience.

Appellant's contention regarding the Trustee's personal relationships is equally unconvincing. Citizens Union has more than thirty board members, and Appellant has presented no evidence to suggest that the Trustee even knows Smith, much less that he knows that Smith was affiliated with the Dakota. In any event, Smith was dismissed as a defendant in the Dakota lawsuit in 2011, almost a year before the bankruptcy proceeding began. *See Fletcher, et al. v. The Dakota, et al.*, No. 101298/11 (N.Y. Sup. Ct. 2011). Furthermore, Appellant fails to explain how the Trustee's serving on a board with someone affiliated with the Dakota would even create an interest adverse to the estate. Once again, Appellant misapprehends the distinction between himself and the estate. Not surprisingly, Appellant offers nothing to suggest that the Trustee holds or represents interests adverse to the *estate* stemming from his personal relationships.

In sum, since the Trustee neither holds nor represents interests adverse to the estate, Appellant's conflict-of-interest claim fails.

### b. Luskin

Appellant also contends that Luskin holds interests adverse to the estate because Luskin: (1) represented, in unrelated bankruptcies, accounting firm Ernst & Young, which was involved in the bankruptcy proceedings of another of Appellant's funds overseas; and (2) had a longstanding "working relationship" with Young Conaway Stargatt & Taylor, LLP ("Young Conaway"), Appellant's former counsel. (Doc. Nos. 544, 566.) Additionally, Appellant posits that because Luskin had worked with law firm Nixon Peabody LLP, which had previously represented FILB on an unrelated matter, Luskin has interests adverse to the estate. (Appellant's Br. at 17.)

18

The Court rejects Appellant's contentions. As an initial matter, Luskin disclosed its work for Ernst & Young in its retention application in 2012, and Appellant did not object. (Doc. Nos. 120, 146.) Additionally, Appellant fails to explain how Ernst & Young holds an interest adverse to FILB or how Luskin's representation of Ernst & Young in unrelated matters violates 11 U.S.C. § 327(a). Furthermore, Appellant's assertion that Luskin's work with Young Conaway and Nixon Peabody creates an adverse interest is similarly unavailing. Appellant has failed to demonstrate: (1) that Luskin and these firms, in fact, had a "working relationship"; (2) that Young Conaway and Nixon Peabody hold interests adverse to FILB; or (3) how Luskin's relationship with these firms would create an adverse interest between Luskin and the estate. Accordingly, Appellant's claim that Luskin holds or represents an interest adverse to the estate is also meritless.

c. Goldin

Finally, Appellant asserts that Goldin represents interests adverse to the estate, since some of its clients are either affiliated with the Dakota or involved in the liquidations of Appellant's other funds. (Doc. No. 493.) More specifically, Appellant alleges that the following former and current Goldin clients create conflicts of interest for Goldin in advising the Trustee on the estate: JPMorgan Chase, Credit Suisse, Holland & Knight, HSBC, and Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz"). (*Id.*) Additionally, Appellant points to the fact that Goldin's counsel on an unrelated matter, Quinn Emanuel, also represents the Dakota. (*Id.*)

The Court, once again, is unpersuaded by these arguments. First, Goldin disclosed its connections to Ernst & Young, JPMorgan Chase, Credit Suisse, Holland & Knight, HSBC, and Kasowitz in its initial retention application in 2012, and Appellant did not object. (Doc. Nos. 124, 146.) Second, Appellant has failed to demonstrate how these entities – none of whom are parties to the FILB bankruptcy or the Dakota lawsuits – are adverse to FILB, or how Goldin's providing

19

them financial services constitutes "representation" as defined in Section 327. 11 U.S.C. § 327(a).

Third, Appellant does not, and cannot, explain how an entity's sharing counsel with the Dakota,

an adversary to Appellant in an unrelated lawsuit, creates an interest adverse to FILB. Thus,

Appellant has failed to demonstrate that Goldin holds or represents interests adverse to the estate.

In short, the Court agrees with the Bankruptcy Court that Appellant's arguments are

unpersuasive, that his allegations are irrelevant and, in any event, unsupported, and that the

Fiduciaries neither have nor represent interests adverse to the bankruptcy estate. Accordingly, the

Court finds that the Bankruptcy Court did not abuse its discretion in determining that there were

no conflicts.

3. The Bankruptcy Court Did Not Abuse its Discretion in Granting the Fiduciaries' Applications

Pursuant to Section 330 of the Bankruptcy Code, bankruptcy judges may award reasonable

fees to trustees and their appointed professionals. 11 U.S.C. § 330 (a). The decision to award fees,

and the amount of fees to grant, is within the sound discretion of the bankruptcy judge. *In re

Bayshore*, 209 F.3d at 103. Thus, the Bankruptcy Court's fee determination here should only be

overturned if the Bankruptcy Court abused its discretion.

Here, even a brief review of the record reveals that the Bankruptcy Court did not abuse its

discretion in approving the Fiduciaries' fee applications. In their unopposed retention applications,

the Fiduciaries listed their hourly rates and their policies regarding expenses. (Doc. Nos. 112, 120,

124.) All three Fiduciaries agreed to bill at a rate ten percent below their ordinary rate. (*Id.*)

Additionally, all three filed multiple fee applications between 2012 and 2014 to which neither

Appellant, nor anyone else, objected. (*See, e.g.*, Doc. Nos. 172, 233, 308, 309, 359, 360.) It was

not until 2014 – after the Trustee issued a report alleging that Appellant had defrauded investors

and thus deeply subordinated Appellant's claim – that Appellant objected to the Fiduciaries'

compensation and sought disgorgement. (Doc. Nos. 393, 481(a).) In granting the Fiduciaries' fee applications, the Bankruptcy Court appropriately considered the Fiduciaries' qualifications, the quality of their work, and the benefit they provided to the estate, and concluded that the Fiduciaries' performance had been satisfactory and that their compensation was justified. (Doc. No. 577 at 38–40.) Having reviewed the record, the Court finds that the Bankruptcy Court did not abuse its discretion in making this determination and awarding the Fiduciaries their fees.

Finally, it is also within a bankruptcy court's discretion to order disgorgement of compensation if a conflict of interest is subsequently discovered or if the fiduciary ceases to be disinterested. 11 U.S.C. § 328(c); *Vecchio*, 20 F.3d at 560. Once again, there is no indication that the Bankruptcy Court abused its discretion in electing not to disgorge the compensation of the Fiduciaries. Although the Bankruptcy Court gave Appellant every opportunity to demonstrate how the Fiduciaries had conflicts of interest and why their compensation ought to be disgorged, Appellant put forth no credible arguments. The Bankruptcy Court was in an excellent position to determine whether or not disgorgement was appropriate, and the Court finds that there is no basis in the record to conclude that the Bankruptcy Court abused its discretion in denying disgorgement.

### IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court AFFIRMS the Bankruptcy Court's Disgorgement Order in its entirety. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated:       September 9, 2015
             New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE